IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 3, 2024 Session

## HAROLD C. BOWDEN, IV v. AMBER CRUTCHER

**Appeal from the Circuit Court for Sumner County**
**No. 83CC1-2021-CV-344      Joe Thompson, Judge**

_____

## No. M2023-01735-COA-R3-CV

_____

In this custody case, the trial court adopted a parenting plan that ordered equal parenting time. The father appeals, seeking a reversal of the award of equal parenting time, an increase in the mother's monthly income for child support purposes, payment of one-half the childcare costs, custody on alternating July the fourth holidays, and attorney's fees. We affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which W. NEAL MCBRAYER and JEFFREY USMAN, JJ., joined.

Kimberly Reed-Bracey Johnson, Goodlettsville, Tennessee, for the appellant, Harold C. Bowden, IV.

Amanda Raye Thornton, Nashville, Tennessee, for the appellee, Amber Crutcher.

### OPINION

The parties to this custody case, Harold C. Bowden, IV ("Father") and Amber Crutcher, now Stites ("Mother"), met on Instagram and dated briefly. After they broke up, Mother learned that she was pregnant. On April 19, 2021, Father filed a petition to establish parentage, to enter a temporary parenting plan and for extraordinary injunctive relief. There followed a plethora of motions, contempt allegations and hearings, which will be discussed as needed. The end result was the trial court's adoption of a parenting plan awarding the parents equal parenting time and designating Father the primary residential parent with sole decision-making authority for many major decisions. Father appealed raising the following issues that we slightly restate:

1. Should the trial court's grant of equal parenting time be reversed and Father be granted the majority of parenting time?
2. Should Mother's gross monthly income be increased?
3. Should Mother pay one-half of the daycare?
4. Should Father receive the July 4th holiday in alternating years?
5. Should Father be awarded reasonable attorney's fees for the trial and appeal?

Mother adds the issue of whether she should be awarded her attorney's fees and costs on appeal.

STANDARDS OF REVIEW

This Court's review of the trial court's factual determinations is de novo upon the record, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. TENN. R. APP. P. 13(d). Questions of law are reviewed de novo, with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). Furthermore, our Supreme Court has stated that:

> Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, *Holloway v. Bradley*, 190 Tenn. 565, 230 S.W.2d 1003, 1006 (1950); *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997), trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007). Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988) (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. *Id*. "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

*Id.* at 693.

ANALYSIS

*50/50 Split Custody*

In any Tennessee proceeding "where the custody of a minor child or minor children is a question," Tenn. Code Ann. § 36-6-101(a)(1), "the court must 'make a custody determination.'" *Armbrister*, 414 S.W.3d at 694 (quoting Tenn. Code Ann. § 36-6-106(a) (2010 & Supp. 2013)). Although the trial court named Father the primary residential parent with custody of the child 50 percent of the time, Father appeals the trial court's determination of custody because he maintains that "this case is not appropriate for a 50/50 split in parenting time." While the trial court found most of the factors in Tenn. Code Ann. § 36-6-106(a) to be equal between the parents or not applicable, Father takes issue with the court's findings regarding factors (2), (4), (10), and (11).

Factor (2) considers the parents' "past and potential for future performance of parenting responsibilities." *Id.* § 36-6-106(a)(2). The trial court found that this factor favored Mother because, although Mother was not blameless, Father "wants this to be essentially a mechanical or sterile relationship where he does not co-parent with the mother, but simply takes the minor child to her when he has to, picks the child up when he has to, etc." Father, the court found, "does not view the mother as a critical parent of the child's life." The record does not preponderate against these findings. Therefore, while the issue is a close one, we agree with the trial court.

The fourth factor, "[t]he disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care," appears to be equal. *Id.* § 36-6-106(a)(4). While the trial court did not expressly say so, it did state "that both parents take care of the minor child. Both parents provide clothing, a roof over his head, medical care, food, and all of the child's necessities." Father emphasizes Mother's many jobs and residences over a relatively short period of time, interference with daycare, and three DCS investigations as evidence contradicting the trial court's findings. Father's concerns in these areas do not prove that Mother did not take care of the child. They do not negate or detract from the trial court's finding that Mother takes care of the minor child.

Factor (10) pertains to "[t]he importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment." *Id.* § 36-6-106(a)(10). Father attacks the child's environment, complaining that the child has bumps and bites, smelly feet and shoes, and clothes that are too big. Yet, both parents stated that the other is a good parent and that the child is healthy and happy. The trial court found that factor 10 was equal for both parents, and we agree.

Factor (11) considers whether there is "[e]vidence of physical or emotional abuse to the child, to the other parent, or to any other person." *Id.* § 36-6-106(a)(11). The trial court found Factor (11) not applicable. Nevertheless, Father maintains that Mother has

inflicted emotional abuse on him by calling the police, telling others that she is afraid of Father, and communicating with other members of Father's family. Mother states that there is no evidence of abuse. Based on this record, we agree with the trial court.

Mother complains about the trial court's findings regarding factors (8) and (9). Factor (8) addresses "[t]he moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child." *Id.* § 36-6-106(a)(8). The trial court adopted Mother's parenting plan and designated Father the primary residential parent. Relying on Father's lack of communication, Mother takes issue with the court's belief that he "is the more levelheaded parent." The trial court emphasized that "his decision-making for the minor child has been more mature than the mother's and in the minor child's best interest." The evidence in the record does not preponderate against these findings. We agree with the trial court.

Factor (9) concerns the child's interactions with siblings, other relatives, and step-relatives. *See id.* § 36-6-106(a)(9). The testimony was that the child got along with everyone. The trial court found that this factor favored Father because Mother had driven "a wedge" between Father and his daughter. Respectfully, this factor concerns the child's interactions with half-siblings, not Mother's interactions. Therefore, we find that this factor is equal as to both parents. For reasons discussed below, we believe that this one change we have made in the analysis of the factors in Tenn. Code Ann. § 36-6-106(a) does not mandate a change in the custody arrangement.

Both the trial court's decision and Father's brief note the similarity of this case to *Rajendran v. Rajendran*, No. M2019-00265-COA-R3-CV, 2020 WL 5551715 (Tenn. Ct. App. Sept. 16, 2020). As here, *Rajendran* involved parents who could not get along and lived far apart. *Rajendran*, 2020 WL 5551715, at *1-2. The trial court awarded the parties equal parenting time. *Id.* at *2. The Court of Appeals awarded the mother more time than father after concluding that five factors favored the mother, zero factors favored the father, and four factors were equal. *Id.* at *7, *11. In this case, we changed one factor from favoring Father to being equal. Thus, one factor favors Father, one factor favors Mother, eight factors are equal, and six factors do not apply. The factors as a whole turn out to be very equal, unlike *Rajendran*.

In *Rajendran*, the court stated that "'split custody should only be ordered when there is specific, direct proof that the child's interest will be served best by dividing custody between the parents.'" *Id.* at *8 (quoting *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *8 (Tenn. Ct. App. July 19, 2005)). In this case, the testimony established that the child was healthy and happy after living for some time under a 50/50 parenting arrangement. The parents' failure to get along apparently had no negative impact upon the child.

Under the specific facts of this case, we conclude that the trial court did not abuse its discretion in awarding equal parenting time.

## Mother's Gross Monthly Income

The trial court determined that Mother's gross monthly income was $2,569.06 for child support purposes. The trial court did not state the source of that figure or give any indication of the calculation of that figure. Father maintains that the figure is too low based on a 36-hour week at $24 an hour, which would equal $3,744.00 using 4.33 weeks per month. Mother, however, testified that her hours varied week to week, making Father's calculation likely too high. The record does not support Father's contention that Mother's gross monthly income is higher than the $2,569.06 found by the trial court. Accordingly, we find Father's contention unavailing. For her part, Mother, in her briefing before this Court, states that "[t]he Trial Court did not err in his finding as to the incomes of the parties." Having rejected Father's contention and given Mother's concession, we leave the trial court's finding as to Mother's gross monthly income undisturbed.

## Daycare Cost

The trial court's December 5, 2023 order expressly states that, "As for child care, the father will select a child care provider that is roughly equal distance between the parties. This will be the daycare that the parties utilize. The parties will equally split the cost of that daycare provider."[1] In her brief, Mother creates some confusion on this issue by stating that, "the Court correctly held that the parties should pay a pro-rata portion of the childcare costs." She cites to nothing in the Child Support Guidelines or the trial judge's order supporting that statement. We discern that she is arguing that the trial court should have ordered the parties to pay a pro rata portion of the daycare costs. However, she testified as follows: "my proposed parenting plan that I submitted, if that happens, then I would like for dad and I to be able to both utilize the same daycare. That way we can, you know, split the cost, and it would be super easy for [the child] to have consistency." The trial court gave her what she wanted. She cannot now on appeal seek another arrangement.

## Fourth of July Holiday

Father testified that he wanted to have the child on Juneteenth each year. The trial court granted his request, giving Father custody every Juneteenth and Mother custody every July 4th. Father wants alternating visitation for July 4th because "he is an American." The trial court struggled a bit with its decision but ultimately held that, "For now, this is the best way for the court to handle these holidays." The trial court did not want to send a

---

[1] Father's brief indicates that there was another order relating to child-care expenses after the December 5, 2023 order. The record contains a draft order that the trial judge expressly refused to sign on December 13, 2023, because it was unnecessary.

message that one was an African American holiday and the other a white holiday but felt that "it [was] important that when a child has two different cultures, the child be able to appreciate both cultures." The judge balanced Father's request for Juneteenth exclusivity with July 4th exclusivity for Mother. In light of Father's request, this result is neither illogical, illegal nor unjust, and this Court will not tinker with the decision.

*Attorney's Fees*

Both parties request to be awarded attorney's fees. We exercise our discretion not to award attorney's fees to either party.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Harold C. Bowden, IV, for which execution may issue if necessary.


/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE